361 So.2d 990 (1978)
WESTINGHOUSE CREDIT CORPORATION
v.
MOORE & McCALIB, INC., et al.
No. 50499.
Supreme Court of Mississippi.
August 16, 1978.
*991 Thomas, Price, Alston, Jones & Davis, Alex A. Alston, Jr., Jackson, for appellant.
Parker, Averill, Funderburk & Butts, Roy O. Parker, David O. Butts, Jr., Tupelo, for appellees.
Before SMITH, P.J., and BROOM and LEE, JJ.
BROOM, Justice, for the Court:
"Floor planning" (financing) of mobile homes led to this suit by Westinghouse Credit Corporation (Westinghouse herein) against appellees, Moore & McCalib, Inc. (M & M herein), Lee Moore, James R. Moore and Charles E. Simmons (defendants and counterclaimants). Trial in the Circuit Court of Lee County resulted in a directed verdict in favor of all the defendants on Westinghouse's suit, and a directed verdict in their favor on their counterclaim against Westinghouse (appellant) in the sum of $4,938.15. We reverse.
M & M is a sales outlet firm offering mobile home dwelling units to the general public. The two Moores and Mr. Simmons (officers of M & M) are defendants to the Westinghouse suit, along with M & M. Westinghouse's declaration alleged that on May 11, 1972, M & M and its officers entered into an agreement with Westinghouse whereby upon their request and at Westinghouse's option, Westinghouse would advance funds to enable M & M to purchase the homes for resale. On October 6, 1972, a similar agreement was also executed between Westinghouse and the individual defendants. Under this typical floor planning agreement, Westinghouse took a "floating" security interest in M & M's inventory of mobile homes and, as a home was sold, M & M was to pay Westinghouse the amount due on that unit. Repayment on all advances was due in ninety days unless the terms were extended by Westinghouse. Westinghouse filed a suit alleging that M & M and its officers were indebted to Westinghouse in the amount of $6,908.42; copies of the two agreements were attached to the declaration. M & M and its officers answered (denying any debt to Westinghouse) and counterclaimed for $4,938.15, which they alleged was the amount due for repossessing five mobile homes for Westinghouse pursuant to the agreement between the parties. Westinghouse argues that (1) the lower court erroneously directed a verdict against it on its suit, and (2) the court erred in granting the directed verdict in favor of M & M as to the counterclaim against Westinghouse.
At the trial, Westinghouse introduced the U.C.C. agreements signed by M & M and by the three individual defendants.[1] Then *992 Westinghouse attempted to introduce an inventory billing statement to which M & M successfully objected, pointing out that it was not attached to the declaration as required on an open account suit. M & M asserted (and now argues) that Mississippi Code Ann. § 11-7-47 (1972) and § 11-7-45 (1972) precluded admission of the billing statement into evidence. Westinghouse then attempted to introduce oral testimony as to the amount due, but M & M successfully objected on the basis of the best evidence rule and that the answer called for a legal conclusion. In that situation, Westinghouse rested and the court granted a directed verdict in favor of M & M, after which the trial proceeded on the counterclaim.
WAS THE SUIT OF WESTINGHOUSE UPON AN OPEN ACCOUNT, REQUIRING THAT THE INVENTORY BILLING STATEMENTS BE ATTACHED TO THE DECLARATION IN ORDER TO BE ADMISSIBLE INTO EVIDENCE? The question is critical as to Westinghouse's suit because it attempted to prove the amount of its claim by introducing inventory billing statements which were not filed with or attached to the pleadings. M & M objected to Westinghouse placing into evidence the inventory billing statements and relied upon Mississippi Code Ann. § 11-7-45, supra, which provides that in open account suits there shall be annexed to or filed with the declaration "a copy of the account or bill of particulars... ." § 11-7-47, supra, provides:
A copy of any writing of which profert is made, or ought to be made ... shall be annexed to or filed with the pleading ... and evidence thereof shall not be given at the trial unless so annexed or filed....
"Open account" has been given various definitions, but it is generally held to mean an account based on continuing transactions between the parties which have not been closed or settled but are kept open in anticipation of further transactions. We hold that the declaration of Westinghouse before us did not present a suit based upon an open account. Scrutiny of the declaration indicates that it is a suit sounding in contract, and although the declaration should have stated the amount of Westinghouse's claim with greater particularization, there was not filed by M & M any demurrer, request for discovery, motion for bill of particulars, or other challenge. Mississippi Code Ann. § 11-7-35 (1972) provides that a declaration shall state the cause of action in ordinary and concise language and shall be sufficient if it contains "sufficient matter of substance for the court to proceed... ." Clearly, the declaration of Westinghouse complied with § 11-7-35, and was based upon two written contracts, the execution of which was not denied. Oral argument of M & M noted that the charge of "breach of contract" does not appear in the declaration. Nevertheless, we hold that no magic words such as "breach" are necessary where, as here, the allegations in simple language state a cause of action as required by § 11-7-35.
Barron v. Murdock Accept. Corp., 240 Miss. 521, 127 So.2d 878 (1961), held that the suit there which arose from a "floor-planning" financing method similar to the one in this case was a suit based on contract rather than open account. Barron stated:
[T]he suit was one for balances allegedly due on certain written contractual obligations which were filed as exhibits to the bill of complaint. (§ 1754, Code of 1942, is now § 13-1-141 Miss. Code Ann. (1972)).
Upon the pleadings and record presented, Mississippi Code Ann. §§ 11-7-45, supra, and 11-7-47, supra, are not germane and constitute no basis for the directed verdict against Westinghouse on its suit in contract. It was error for the lower court to exclude the inventory billing statements and direct a verdict against Westinghouse.
DID THE LOWER COURT ERR IN DIRECTING A VERDICT IN FAVOR OF M & M AND THE OTHER INDIVIDUAL DEFENDANTS ON THEIR COUNTERCLAIM? In support of their counterclaim, *993 M & M (and the other appellees) placed into evidence five invoices as proof of their claim for damages in repossessing and refurbishing mobile homes which they had repossessed. M & M's legal counsel objected to Westinghouse inquiring as to any of these particular invoices on the ground that an itemized sworn account was filed by M & M as counterclaimant which Westinghouse did not deny by affidavit. The court sustained objection of M & M's counsel on the basis of Mississippi Code Ann. § 13-1-141 (Supp. 1972), which provides:
Affidavit to correctness of account entitles affiant to judgment.
A person desiring to institute suit upon an open account in his favor, may make affidavit to the correctness of such account, and that it is due from the party against whom it is charged. In any suit thereon such affidavit attached to the account shall entitle the plaintiff to judgment at the trial term of the suit, unless the defendant make affidavit and file with his plea that the account is not correct, in which event the affidavit to the account shall entitle the plaintiff to judgment only for such part of the account as the defendant by his affidavit shall not deny to be due... .
To be within the purview of the terms of § 13-1-141, the account must be an open account as known to the law. Here the invoices filed by M & M do not constitute any open account; the invoices do not consist of a connected series of transactions detailing debits and credits between the parties which are kept unclosed with the expectation of further transactions. The mere fact that the invoices are attached to the counterclaim does not convert the action to an open account suit.
Cross-examination of Lee Moore produced the following:
Q. And as I understand it then, as you picked up each home on their direction and you did whatever was necessary and you sent them a bill on that particular one?
A. That's correct.
Q. And they would handle each one as they came to their office individually, as far as you know?
A. Well, sometimes they would handle it one way and sometimes another. Occasionally we would do the repairs on it and if we sold the unit, well then, the expense that had occurred against the house in repairs would be deducted from the proceeds of the contract, in other words, settlement would be made at the time of the sale; but, in these particular units here we didn't sell them so there never was any consideration given.
Q. All right, sir. My question is, as far as you can recall about your dealings with Westinghouse Credit, as you pick up a home on the direction of Westinghouse Credit and did some work and you would bill them for that particular one, it might be one at a time or it might be six; but, that particular one would be billed at the time that the work was done?
A. That's right.
Q. And each one was handled in separate, as a separate item?
A. Normally speaking that's right.
It appears from the foregoing that there was an agreement between Westinghouse and M & M that when a purchaser defaulted in payments, Westinghouse would call M & M to repossess the trailer, refurbish if necessary, and then either Westinghouse or M & M would sell the trailer, in which case Westinghouse would settle immediately by crediting M & M's account with the fees. If M & M sold the home, it would deduct the expenses from the selling price and forward the remainder to Westinghouse.
This course of dealing demonstrates that the counterclaim of M & M arose out of their contractual relations giving rise to a series of disconnected events which both parties intended to be settled on an individual basis. Here Westinghouse answered the counterclaim asserted against it and specifically denied that it owed the counterclaimants any sum whatever for each of the five invoices listed and attached to the counterclaim. Witness Wiley Williamson, Credit Manager for Westinghouse, testified *994 that the invoices attached to the affidavit had never been seen in the Westinghouse office, and that he looked at each file involved and had never received billings in connection with the particular mobile homes listed in the affidavit and attachments. According to Williamson, M & M had never been asked to pick up these particular mobile homes. The testimony indicates that whenever Westinghouse desired that a mobile home be repossessed, it notified M & M who would handle each repossession as a separate item and then bill Westinghouse for the cost of repossession and refurbishing the mobile home. In actuality the counterclaim of M & M grew out of agreements or contracts between the parties, and the counterclaim does not fit any legal definition of open account.
Upon the state of the pleadings and upon these facts, we think the matter should have been presented to the jury and the directed verdict in favor of counterclaimants was erroneously entered.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] Our decision here rests solely upon the record and briefs which make no reference to our Uniform Commercial Code. It appears that security agreements which include future advances may be within the purview of our U.C.C.: Miss. Code Ann. § 75-9-204(5) (1972).