599 So.2d 1371 (1992)
CENTRAL INSURANCE UNDERWRITERS, INC., Appellant,
v.
NATIONAL INSURANCE FINANCE COMPANY, Appellee.
No. 90-1003.
District Court of Appeal of Florida, Third District.
May 19, 1992.
Wiederhold, Moses, & Bulfin, P.A., West Palm Beach, James C. Blecke, Miami, for appellant.
Lee Milich, P.A., North Miami, for appellee.
Before NESBITT, FERGUSON and COPE, JJ.
PER CURIAM.
Central Insurance Underwriters, Inc. (Central) appeals from an adverse final judgment after a nonjury trial. We affirm in part and reverse in part.
National Insurance Finance Company (National) financed premiums for insureds who could not afford to pay an annual insurance premium in one lump sum. The insured then became obligated to pay National in monthly installments until the advanced premium plus interest was repaid. Central was a licensed managing general agent[1] which represented various insurance *1372 companies and acted as a liaison between independent insurance agents and the insurance companies.
When National financed an insurance premium, it mailed the check for the annual premium amount to Central. The check was made payable to Central, which endorsed the check and deposited it into its bank account. Each check stated on the back, that "[a]cceptance of this draft by the payee [Central] acknowledges National Insurance Finance Company's interest in the unearned return premium and that a policy has been issued to the named applicant and insured and that the unearned premium would be paid to National Insurance Finance Company." After depositing the check, Central then issued a new check for the entire annual premium, less Central's commission and sent the new check to the insurance company.[2]
If an insured defaulted on its payments to National, National sent a cancellation notice to the insured and to Central so that Central would return the unearned premium amount to National. National and Central engaged in these transactions between 1980 and 1986.
In 1984, National informed Central that it owed National unearned premiums for policies that were canceled over the previous several years. Central mailed checks to National for some of the canceled policies but disputed the rest. Intermittently, over the next two years National requested that Central return the unearned premiums, but Central refused to do so.
Again, in April of 1986, National sent a letter asking Central to return unearned premiums and National attached a computer printout listing approximately 240 canceled policies and the amounts owed, totaling over $41,000. Central sent National checks for unearned premiums on several of the accounts, but Central disputed the large majority of the claims. Central informed National that Central had not received the cancellation notices on the remaining accounts and that the policies had expired before the cancellation notices could be forwarded to the insurance companies. Central stated that it no longer represented some of the insurance companies and told National it would have to deal directly with the insurance companies.
In May of 1986, National sued Central alleging that Central owed National damages based on an open account (count I), account stated (count II), conversion (count III) and civil theft (count IV). National attached a copy of the printout to the complaint. National requested compensatory, punitive and treble damages, as well as attorney's fees.
During the nonjury trial, National's first witness, Julio Chang, testified that he was hired by National to enter its accounts into a computer which would keep track of when installment payments were due and which would automatically generate a cancellation notice if an insured failed to make a payment. Chang testified that the computer printouts mailed to Central were the same computer printouts generated by his company. Chang also testified that the dollar amounts on the printouts were amounts owed by the insured to National and were not necessarily the amounts owed by Central to National. The account totals included late charges and bad check fees that Central was not responsible for.
During Chang's testimony, the trial judge decided to appoint an independent accountant to determine what amount, if any, was owed to National. Central and National entered into an agreed order appointing the accountant, but Central reserved the right to argue that it was not liable to pay any monies to National. Central agreed to allow the accountant to examine *1373 its records, but it did not stipulate to the contents of the accountant's report.
When his investigation was complete, the accountant testified that Central owed National $34,356.53 out of the approximately $41,000 National originally claimed. National argued that Central should be found liable for the amount based upon the agreed order. However, the trial judge ruled that he would make a decision based on the remainder of the evidence presented.
National's president testified that all cancellation notices were properly and promptly mailed to Central at the same time the notices were mailed to the insured. National entered into evidence copies of its contracts, checks to Central and the cancellation notices.
Central's sole witness was the company president. He testified that when he received a check from National, the check was deposited into Central's account. Central sent monthly statements to the various insurance companies along with a check for annual premiums collected by Central during the previous month. When Central received a cancellation notice from National, Central sent a check to National for the unearned premium amount and Central then deducted the amount of the check from the appropriate insurance company's monthly statement.
Central's president further testified that if he no longer represented the insurance company when he received a cancellation notice from National he would inform the company that a policy was canceled and would request that the insurance company reimburse the unearned premiums. The reimbursement would then be forwarded by Central to National. The president testified that if a cancellation notice was received after a policy had expired, he would not be able to reimburse National because the premiums were properly retained by the insurance company. Central did not produce records to show that policies, National claimed to have properly canceled, in fact had not been properly canceled and had expired.
At the close of all the evidence, the trial court dismissed the civil theft count and ruled in National's favor on counts I, II and III. As to counts I and II, the trial court awarded National $34,356 along with prejudgment interest from 1984 for a total of $60,058.73. The trial court also found that Central had converted funds belonging to National and trebled the award under count III, for a total of $180,176.19. Additionally, the trial court found that National was entitled to attorney's fees and costs. Central appeals the trial court's judgment.
Central argues that National failed to prove the elements of open account. We disagree. An open account is "one which is based upon a connected series of transactions, and which has no break or interruption." 1 Am.Jur.2d Accounts and Accounting § 4 (1962). In Florida, an open account has been defined as an "unsettled debt arising from items of work and labor, goods sold and delivered with the expectation of further transactions subject to further settlement." Robert W. Gottfried, Inc. v. Cole, 454 So.2d 695, 696 (Fla. 4th DCA 1984) (emphasis added). Money advanced may form the basis of an open account. 1 Am.Jur.2d Accounts and Accounting § 7 (1962).
In this case, National presented evidence to show that it engaged in a series of connected transactions with Central and that an account existed between Central and National in which there was a series of debits and credits between the parties, from which an account amount could be ascertained. See 1 Am.Jur.2d Accounts and Accounting § 4 at 373. In fact, the court-appointed accountant arrived at a figure which, he testified, reflected the amount which Central owed National.
Central's president denied that any money was owed to National. However, Central's testimony consisted entirely of generalities. Central did not address the 240 items with any particularity. Although Central claimed to have records which would support its position, those were not furnished to the accountant or introduced at trial. The trial court weighed the parties' credibility and found in favor of National. There was competent substantial *1374 evidence which supports the trial court's ruling. See Robert W. Gottfried, Inc., 454 So.2d at 696-97. The judgment on the claim for open account is affirmed.
Although the affirmance on the open account claim renders the question academic, Central is correct in arguing that there is insufficient evidence to support the alternative claim for account stated. See Merrill-Stevens Dry Dock Co. v. "Corniche Express", 400 So.2d 1286 (Fla. 3d DCA 1981). The judgment on that count is reversed.
The trial court erred in entering judgment against Central for conversion. National argued that Central was liable for conversion under section 626.561, Florida Statutes (1989), which states that "[a]ll premiums, return premiums, or other funds belonging to insurers or others received by an agent, soliciter, or adjuster in transactions under his license shall be trust funds so received by the licensee in a fiduciary capacity... ." National argued that the unearned premiums received by Central were "trust funds" and that Central converted these funds to its own use.
To prevail on this claim, National had to show (1) that Central collected the unearned premiums from the insurance companies, creating the "trust fund,"[3] and (2) that Central failed to remit those unearned premiums to National. See Keegan v. Ennia General Ins. Co., 591 So.2d 300, 301 (Fla. 3d DCA 1991); Copeland Ins. Agency, Inc. v. Home Ins. Co., 502 So.2d 93, 95 (Fla. 5th DCA 1987). National did not make the necessary showing at trial. National showed that it had sent cancellation notices to Central and had not been repaid the unearned premiums. That evidence is consistent with Central's having received the cancellation notices and done nothing. Such inaction would result in the policies' expiration and no return of unearned premiums by the insurers. While National did show that Central owed a debt for an open account, National did not present any evidence to show that Central collected unearned premiums from insurance companies and that Central failed to send the money to National. Therefore, the judgment for conversion must be reversed.
The trial court awarded National attorney's fees. However, National was only entitled to attorney's fees under the civil theft count of the complaint. At the close of all the evidence, the trial court dismissed the civil theft count and, thus, there is no basis for awarding attorney's fees. See City of Cars, Inc. v. Simms, 526 So.2d 119, 121 (Fla. 5th DCA), review denied, 534 So.2d 401 (Fla. 1988).
We affirm the judgment for open account but reverse the judgment for account stated, conversion, treble damages, and attorney's fees.
NOTES
[1] Section 626.091, Florida Statutes (1991) defines a managing general agent:

(1) "Managing general agent" means any person that manages all or part of the insurance business of an insurer, including the management of a separate division, department, or underwriting office, and acts as an agent for such insurer ... who, with or without the authority, either separately or together with affiliates, produces, directly or indirectly, or underwrites an amount of gross direct written premium equal to or more than 5 percent of the policyholder surplus as reported in the last annual statement of the insurer in any one quarter of year and also does one or more of the following:
(a) Adjusts or pays claims.
(b) Negotiates reinsurance on behalf of the insurer.
[2] National argued that Central deposited the check and then mailed monthly premium checks to the insurance company. However, a review of the record shows that Central mailed the entire annual premium to the insurance company at one time.
[3] This could be shown by Central actually receiving such a payment from an insurer. It could also be shown by Central's having taken a credit against premium amounts it otherwise owed to the insurer. Either approach would leave a premium "trust fund" in Central's hands.