671 So.2d 636 (1996)
Mark M. ALLEN
v.
MAC TOOLS, INC., Ernie Christmas, Individually and as Agent, Servant and Employee of Mac Tools, Inc.; and Ronald M. Jenkins, Individually, and as Agent, Servant and Employee of Mac Tools, Inc.; and Nick Tremonte, Individually, and as Agent, Servant and Employee of Mac Tools, Inc.
Mark M. ALLEN
v.
MAC TOOLS, INC.; Ernie Christmas, Individually and as Agent, Servant and Employee of Mac Tools, Inc.; and Ronald M. Jenkins, Individually and as Agent, Servant and Employee of Mac Tools, Inc.; and Nick Tremonte, Individually and as Agent, Servant and Employee of Mac Tools, Inc. and
Mac Tools, Inc.
v.
Mark M. Allen and Sherry A. Allen.
Nos. 92-CA-00840-SCT and 92-CA-01027-SCT.
Supreme Court of Mississippi.
February 8, 1996.
Rehearing Denied April 18, 1996.
*637 James W. Nobles, Jr., Jackson, for appellant.
Ross E. Henley, John H. Henley, Henley Lotterhos & Henley, Jackson, for appellee.
Before SULLIVAN, P.J., and McRAE and JAMES L. ROBERTS, Jr., JJ.
SULLIVAN, Presiding Justice, for the Court:
On or about October 2, 1990, Mark M. Allen (Allen), filed a complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi. The complaint alleged that Mac Tools, Inc. (Mac Tools), Ernie Christmas (Christmas), Ronald M. Jenkins (Jenkins), and Nick Tremonte (Tremonte), as individuals, willfully, intentionally, maliciously, and wantonly made misrepresentations to him inducing him to enter into a distributorship, and later continue the distributorship for Mac Tools. The complaint demanded judgment for $376,200.00 in actual damages and $5,000,000.00 in punitive damages. On November 29, 1990, Defendants filed their response denying liability. In addition, Mac *638 Tools filed a counterclaim seeking a judgment for approximately $12,000.00 due from Allen for goods he purchased while he was a Mac Tools distributor. On February 28, 1992, Mac Tools filed an Amended Counterclaim joining Mark's wife, Sherry A. Allen (Sherry), as a party to the counterclaim.
On May 29, 1992, Defendants filed their Motion for Summary Judgment or in the Alternative for Partial Summary Judgment, seeking judgment in favor of Defendants on all of Allen's claims and judgment in favor of Mac Tools on its counterclaim.
On June 15, 1992, the trial court granted a Partial Summary Judgment in favor of the Defendants on Allen's claims against Mac Tools, basing its decision on fraudulent inducement. However, the lower court felt that there were material issues of fact with regard to the counterclaim, and set the counterclaim for trial. Allen filed a Motion for Reconsideration of Entry of Summary Judgment on Behalf of Defendants, which the trial court by order denied. The counterclaim of Mac Tools, went to trial on July 20, 1992. The jury returned a verdict and judgment in favor of Mac Tools against Allen and Sherry for $2,805.00. The lower court entered the judgment on July 21, 1992.
On July 30, 1992, pursuant to Rules 50 and 59, Mac Tools filed its Motion for Judgment Notwithstanding the Verdict (JNOV), and its Motion to Amend Judgment to Include Cost of Collection and Pre-Judgment Interest. On September 3, 1992, the trial court entered its order denying Mac Tools' Motion for Judgment Notwithstanding the Verdict. On September 4, 1992, the trial court entered its order awarding attorneys' fees for $9,584.05 to Mac Tools.
On August 12, 1992, before the trial court ruled on Mac Tools' post-trial motions, Allen filed his first Notice of Appeal. This Notice of Appeal designated the orders appealed from as the "Judgment granting defendants' Motion for Summary Judgment dated June 15, 1992, and the Order denying plaintiff's Motion to Reconsider the Entry of the judgment sustaining the Motion for Summary Judgment." On September 28, 1992, Allen filed his second appeal entitled Notice of Appeal from Judgment Awarding Defendant Attorneys Fees. This notice designated the Order appealed from as the Order dated September 4, 1992, awarding attorney fees to Mac Tools, Inc. On October 9, 1992, Mac Tools filed its Notice of Cross-Appeal.
On January 25, 1993, Allen filed with this court a Motion by Appellant to Consolidate Appeals. On January 29, 1993, Appellees filed their Motion to Dismiss Appeal seeking to dismiss Allen's initial appeal of the Partial Summary Judgment and filed an objection to the consolidation of Allen's appeals on the grounds that Allen's Notice of Appeal was prematurely filed. By order entered on March 25, 1993, this Court denied Mac Tools motion to dismiss and consolidated Allen's appeal.

FACTS
Mac Tools, Inc. manufactures and distributes all types of hand and power tools and related products for users in the automotive after market, including service stations, independent garages, car and truck dealerships, and various non-automotive accounts. To market its products to the user, Mac Tools contracts with independent distributors. The primary customers of these distributors are mechanics. Each distributor agrees to display Mac Tools' products and sell the products from a truck approved by Mac Tools. Usually they assign each distributor a territory and are given a current list of potential customers and stops when they sign the original contract. However, that is not true here, as they did not give the assignment sheet to Allen until several months after Allen had signed the contract. Mac Tools requires that distributors purchase products from Mac Tools in an amount equal to at least 80% of the National Distributor Average and that each distributor service the needs, such as broken tools, of the customers of his route weekly.
Before becoming a distributor Allen had been employed as a mechanic at Tune Up Clinic in Jackson, Mississippi for ten years. Allen was recruited to be a distributor by Nick Tremonte during the first part of 1986. Tremonte was the District Sales Manager (DSM) for Mac Tools for an area covering *639 most of Mississippi and small parts of Arkansas and Louisiana. After Allen became a distributor, Tremonte continued as the DSM until the end of 1986. He was succeeded as DSM by Ernie Christmas who himself was succeeded in March 1989 by Ronald Jenkins.
During pre-contract negotiations, there was one face-to-face meeting which involved Allen, his wife, and Tremonte. Then on January 31, 1986, Allen submitted to Mac Tools his application to become a distributor.
On February 24, 1986, Allen executed a Mac Tools Distributor Agreement, in which Mac Tools authorized Allen to sell Mac Tools' equipment, tools, and tool boxes to customers in designated stops. The contract also stated that "[a] current list of potential customers or accounts in Distributor's Territory and the Territory Boundaries are set forth in Appendix A hereto." Mac Tools attached no such appendix to the agreement. Allen states that it was not until August 7, 1986 that Mac Tools furnished the territory assignment and list of stops to him. Allen states that Tremonte, the DSM, made representations to Allen before he entered the contract that there would be at least 250 stops or customers per week available for sales and based on experience, that the average sale per week at each stop was $20.00.
On the same date as they entered the contract, February 24, 1986, Allen purchased an initial inventory package, which Mac Tools financed. Allen and his wife Sherry, in connection with the initial inventory package and the van type truck required by Mac Tools to be purchased by its distributors, executed an agreement entitled Purchase Order and Security Agreement. To acquire additional and replacement inventory for his distributor business, Mac Tools extended Allen a Tool Purchase Account. On February 25, 1986, Allen and Mac Tools also entered a third agreement entitled Financing Agreement Between Mac Tools Distributor and Mac Tools, Inc. where Mac Tools agreed to purchase qualifying accounts from Allen at a discount of nine percent. On April 12, 1986, a new financing agreement known as the Mac Cap Financing Agreement, replaced the previous financing agreement. Under the Mac Cap Agreement, distributors would decide to extend credit to customers based upon a credit report; Mac Tools would extend the credit, and they would require that the distributor collect the payments. If the customer failed to make the payments as required, Mac Tools could "recourse" the distributor for the amounts unpaid. Thus, Mac Tools and Allen established several different accounts. The first was the secured agreement for the initial inventory and truck, which Sherry Allen co-signed. Next, there was the Tool Purchase Account, which allowed Allen to purchase additional inventory. Lastly, there was the Mac Cap Financing Agreement.
When Allen executed all the necessary paper work, he and Tremonte traveled together. Tremonte showed the stops that were in Allen's territory to him when Allen started working. Mac Tools mailed Allen's Official Territory Assignment to him on August 7, 1986.
During 1986, 1987, 1988 and 1989, Allen had several meetings with the different sales managers from Mac Tools, Christmas, Jenkins, and Tremonte, regarding the representation that they would at least provide 250 customers or stops to him. Allen asserts that each of these DSMs assured him that they would assign the additional territory and customers to him. When Allen ventured over into another territory to attempt to make larger sales, Jenkins and Tremonte called and told him in that he would have additional stops added to his territory.
Allen worked as a Mac Tools distributor for three years and eight months from February 24, 1986 until October 26, 1989, when his agreement with Mac Tools was officially terminated. Allen notified Mac Tools of his desire voluntarily to terminate his distributorship until a replacement was found. Allen continued to work as an independent tool distributor after he canceled his agreement with Mac Tools.
Mac Tools, after the termination of the agreement, demanded $11,804.57 from Allen, on the initial secured financing agreement for start up, and Tool Purchase Account, and the Mac Cap accounts which had gone bad. Allen contested these amounts and subsequently he filed the suit in this cause.
*640 The counterclaim of Mac Tools proceeded to trial on July 21, 1992. At trial the only witness to testify was Mr. Scott Goen, the national accounting manager for Mac Tools. He testified on direct as to the various accounts, the initial secured account, the Tool Purchase Account, and the Mac Cap Finance Agreement, the balances, and the transfers between these accounts. He testified that the balance due to Mac Tools from Allen and Sherry for the purchase of Allen's initial start-up inventory under the terms of the Purchase Order and Security Agreement was $10,443.78. Goen also testified that in addition $1,360.79 was due from Allen on his trade account with Mac Tools. The trade account balance included all accounts purchased by Mac Tools pursuant to the Mac Cap Agreement that they have charged back to Allen under the recourse provisions. Goen arrived at a total balance which he claimed due from Allen, which Sherry guaranteed, to be $11,804.57 and $10,443.78 respectively.
On cross-examination, Goen could not tell the jury what the ending balance of Allen's account for the Mac Cap Agreement and the Tool Purchase Account on the date they terminated the relationship. He was unable to find the figures in the stack of paper which was presented to the jury, which consisted of a computer generated accounting records.
Allen rested without putting on any witnesses. The jury returned a verdict and judgment in favor of Mac Tools against Allen for $2,805.00.
Following the verdict, all parties agreed to allow the trial court to assess reasonable attorneys fees' on top of the jury's verdict. On motion by Mac Tools for assessment of attorneys' fees, which it requested to be approximately $38,000.00, the trial court awarded Mac Tools $9,854.05 in attorneys' fees against Allen.

Standard of Review
"It is well settled that a motion for summary judgment challenges the legal sufficiency of all or part of an opponent's case." Dawkins and Co. v. L & L Planting Co., 602 So.2d 838, 841 (Miss. 1992) (citations omitted). "The motion lies only where there is no genuine issue as to any material fact. A fact is material if it tends to resolve any of the issues properly raised by the parties." Id. (citations omitted).
This Court conducts a de novo review of the record on appeal from a grant of a motion for summary judgment. Pace v. Financial Sec. Life of Mississippi, 608 So.2d 1135, 1138 (Miss. 1992) (citing Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 63 (Miss. 1988)). "When reviewing an award of summary judgment, this Court views all evidence in the light most favorable to the non-movant, including `admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.' and will presume that all evidence in the non-movant's favor is true." Downs v. Choo, 656 So.2d 84, 85 (Miss. 1995) (quoting Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss. 1993)).
Where there is doubt whether a fact issue exists, the non-moving party is the beneficiary of that doubt. Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss. 1983). If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, this Court affirms the decision. Brown, 444 So.2d at 362.

I.

WHETHER THE TRIAL COURT ERRED IN GRANTING THE APPELLEE, MAC TOOLS, INC.'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF WAIVER AND ESTOPPEL AS TO THE FRAUD ALLEGED BY MARK ALLEN, TO HAVE INDUCED HIS ENTRY INTO THE CONTRACT FOR A MAC TOOLS DISTRIBUTORSHIP AND WHETHER THERE EXISTED A GENUINE ISSUE OR GENUINE ISSUES OF MATERIAL FACT WHICH PRECLUDED THE ENTRY OF SUMMARY JUDGMENT IN THIS CAUSE.
Allen argues that representations of the number of customers induced him into the Mac Tools Distributorship Contract, which were false and known to be false by the Mac Tools' DSMs. That they gave him a territory *641 which had never had 250 customers or stops and the sales figures quoted him were not based on accurate or true information. He was orally reassured and continuously told by Christmas and Tremonte, that the customers were to be added to make up the deficit which existed in the numbers represented to him to induce him to enter the contract. Allen complains that the trial court missed the aspect of the continuing representations made to him when the court granted the summary judgment in favor of Mac Tools. Mac Tools counters and states that even if there were such fraudulent representations, Allen waived any right to assert a claim or defense of fraudulent inducement based on such representations.
The trial court below granted summary judgment on this Court's decision of Turner v. Wakefield, 481 So.2d 846 (Miss. 1985). In this decision Turner sued Wakefield for the balance due on a promissory note executed by Wakefield for the purchase of Turner's chiropractic practice. Turner asserted that Wakefield wrongfully misrepresented the value of the equipment and expected business income in the first year. Id. at 847. However, Wakefield discovered the misrepresentations four months after the contract was entered but continued to operate the business and to make note payments for an additional eleven months. Id. at 848. This Court held that if fraud did exist, Wakefield waived his right to allege it by ratifying the contract after discovery of the fraud. Id. This Court stated
Where [sic] one is induced through false and fraudulent representations to enter into an agreement upon discovery thereof, he has an election to either rescind, in which event he must tender back that which he has received, or he may affirm the agreement, and maintain his action in damages for deceit, but his election must be promptly made, and, [sic] when once made, is final. If one elects to affirm the agreement, after full knowledge with the truth respecting the false and fraudulent representation[s], and thereafter continues to carry it out and receive its benefits, he may not thereafter maintain an action in damages for deceit, because this would constitute a ratification if the agreement and condemnation [sic] of the fraud; otherwise one might, with knowledge of fraud, speculate upon the advantages or disadvantages of an agreement, receive its benefits, and thereafter repudiate all its obligations.
Turner, 481 So.2d at 848 (quoting Stoner v. Marshall, 145 Colo. 352, 358 P.2d 1021, 1022-23 (1961)). "A contract obligation obtained by fraudulent representation is not void, but voidable. Upon discovery thereof, the one defrauded must act promptly and finally to repudiate the agreement; however, a continuance to ratify the contract terms constitutes a waiver." Turner, 481 So.2d at 848-49.
The facts clearly show that Allen did not promptly repudiate but instead remained a distributor for Mac Tools for approximately three years and eight months. Allen states that he "became immediately aware of the fact that there were not sufficient customers in said area, as had been represented to him, wherein he could make 200 to 250 sales per week." Also, Allen testified in his deposition that he learned Tremonte's statement regarding sales potential was false in June 1986. Allen also made forty-two monthly installments for his initial inventory and he ordered and purchased additional inventory from Mac Tools. Allen continued to work, and did not take prompt action as required by this Court in Turner to terminate his distributorship with Mac Tools or to declare the contract between himself and Mac Tools void and unenforceable by this Court's holding in Turner.
Allen argues that his case is factually dissimilar to Turner, thus its holding and promulgated rule should not be applicable toward him. According to Allen the difference lies in the fact that the DSMs gave him additional representations or promises and thus his case does not fall within the purview of Turner. It appears that Allen was arguing fraudulent inducement or in the alternative fraud. The lower court merely treated this matter as a fraudulent inducement case and properly found under this Court's ruling in Turner that due to Allen's actions after his discovery of the alleged fraudulent acts that Allen waived any right to assert a claim for *642 damages based upon fraudulent inducement. However, the lower court did not address the merits on the ongoing fraud.
Allen asserts that after signing the agreement he discovered that the Defendants had made false representations which induced him into entering the Distributor Agreement with Mac Tools. Specifically, Allen testified that after signing the Distributor Agreement, he discovered that representations made by Tremonte about the number of available sales were false, and that these false representations, which Tremonte and the subsequent DSMs knew to be false, were continually made to him. Thus the evidence for review for the lower court concerned not only fraudulent inducement but also fraud.
A review of the original complaint filed by Allen reveals, while not artfully plead, the complaint alleges fraud sufficient to meet the standards predicated under Miss.R.Civ.Pro. 9(b). "[T]he circumstances constituting the fraud shall be stated with particularity. Fraud will not be inferred or presumed and may not be charged in general terms. The circumstances of the alleged fraud such as the time, place and contents of any false representations or conduct must be stated." Brabham v. Brabham, 483 So.2d 341, 342 (Miss. 1986) (citing Miss.R.Civ.P. 9(b); McMahon v. McMahon, 247 Miss. 822, 157 So.2d 494, 495 (1963); V. Griffith, Mississippi Chancery Practice § 589 (2d ed. 1950)).
The elements of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on the representation's truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. Franklin v. Lovitt Equip. Co., Inc., 420 So.2d 1370, 1373 (Miss. 1982). Conditions of mind, such as intent and malice, are required to be averred only generally. Benson v. Hall, 339 So.2d 570 (Miss. 1976); Edmonds v. Delta Democrat Pub. Co., 230 Miss. 583, 93 So.2d 171 (1957).
In addressing Allen's complaint, he stated all the nine elements necessary for a fraud claim. He argued (1) that Tremonte made a representation to him concerning the amount of customers, approximately 200 to 250; (2) that this number was indeed false; (3) that the number of customers was much less then represented and there were other Mac Tools' distributors in his territory, which caused a substantial decrease in available sales; (4) that Tremonte, Christmas, and Jenkins all were completely aware of the lack of customers; (5) that the DSMs intended, by making the false representations, to keep him as a distributor; (6) that he believed that the DSMs would work on increasing his territory to rise to the level of 200 to 250 customers; (7) that he relied on the representations of the DSMs when he purchased his initial inventory and later invest in more inventory; (8) that he believed that he had the right to rely on the DSMs' representations and attempted dutifully and faithfully to attempt to perform the provisions of the contract; (9) and that he suffered injury and loss of earning capacity for a total amount of three hundred seventy-six thousand two hundred dollars. Therefore, in Allen's complaint he not only alleges fraudulent inducement but fraud. It is not clear in the record why the trial judge did not consider the complaint as one in fraud, but the judge's order only addressed the issue of fraudulent inducement.
This Court has stated before that "[s]ummary judgment may be inappropriate in most complex cases  for example, in cases dealing with fraud." Cunningham v. Lanier, 555 So.2d 685, 687 n. 2 (Miss. 1989) (citation omitted). In the context of summary judgment when the party has alleged fraud this Court has alluded to the notion that the cases which involve allegations of fraud or misrepresentation generally are inappropriate for disposition at a summary-judgment stage. Great S. Nat'l Bank v. McCullough Envtl. Servs., Inc., 595 So.2d 1282, 1289 (Miss. 1992); Pursue Energy Corp. v. Perkins, 558 So.2d 349, 354 (Miss. 1990). Thus, concluded by our jurisprudence is the understanding that triable issues of fact do exist when the facts or evidence support the allegation that fraud and misrepresentation were involved. Great S. Nat'l Bank, 595 So.2d at 1289. It is well *643 established that fraud is never assumed but is essentially a question of facts which clear and convincing evidence must prove. Parker v. Howarth, 340 So.2d 434, 437 (Miss. 1976). Fraud is essentially a question of fact best left for the jury.
"In an allegation of fraud ... the precise facts which would establish the fraud will often be known only by the party or parties alleged to have committed the fraud. Because the factor of intent which is necessary to establish fraud requires knowledge of the perpetrator's state of mind, it may not be possible for an opponent to reveal detailed precise facts in support of his claim." Crystal Springs Ins. Agency, Inc. v. Commercial Union Ins. Co., 554 So.2d 884 (Miss. 1989) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2727 (1983)). "[T]he clear and convincing standard required of the evidence to sustain a claim of fraud is certainly met in a summary judgment posture when one witness specifically claims a representation was in fact made." Simmons v. Thompson Machinery of Mississippi, Inc., 631 So.2d 798, 802 (Miss. 1994) (quoting McMullan v. Geosouthern Energy Corp., 556 So.2d 1033, 1037 (Miss. 1990)). Finally, in a motion for summary judgment, a genuine issue of material fact is obviously present where one party testifies to one account of the matter in interest and the other party swears otherwise. Simmons, 631 So.2d at 802 (citing Newell v. Hinton, 556 So.2d 1037, 1041 (Miss. 1990)).
As the record reveals, clearly there exists disputed material facts. "Motions for summary judgment may not be used to determine or decide issues of fact, only to decide whether there are any material fact issues to be tried." Simmons, 631 So.2d at 801 (citing American Legion Ladnier Post Number 42 v. City of Ocean Springs, 562 So.2d 103, 106 (Miss. 1990)).
Application of the law to the evidence and viewing the facts in the light most favorable to Allen leads to the conclusion that material issues of fact exist. Allen claims that Mac Tools made several representations, know to be false representations, as to the acquirement of more customers, certainly disposition of this issue requires a determination by a finder of fact. The best way and perhaps the only way for Allen to prove fraudulent representations amounting to fraud would be at a trial in which he could test the credibility of the DSMs whom he claims made the fraudulent representations to him.
This opinion should not be construed as resolving the issue of fraud in favor of Allen; rather, from the evidence in the record, Allen should be entitled to an opportunity to prove the merits of his case at a trial by jury. As the benefit of the doubt should go to the party opposing the granting of summary judgment, there were issues that were proper questions for consideration on the merits. In view of the foregoing, the grant of summary judgment in favor of Mac Tools was error, and this case should be reversed and remanded.

II.

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING THE APPELLEE, MAC TOOLS, INC., NINE THOUSAND EIGHT HUNDRED AND FIFTY-FOUR DOLLARS & 05/100 ($9,854.05) IN ATTORNEY'S FEES WHEN IT RECOVERED ONLY TWO THOUSAND EIGHT HUNDRED FIVE DOLLARS & 00/100 ($2,805.00) BY WAY OF FINAL JUDGMENT ON THE JURY VERDICT ENTERED IN THIS CAUSE, AND AS TO WHETHER OR NOT THE ATTORNEYS' FEES SO AWARDED WERE GROSSLY EXCESSIVE IN PROPORTION TO THE AMOUNT OF THE VERDICT RENDERED BY THE JURY IN THIS CAUSE AS TO THE AMOUNTS OWED BY MARK ALLEN TO MAC TOOLS, INC., UNDER THE CONTESTED CONTRACT.
After the receipt of the jury verdict the parties agreed to allow the lower court to set reasonable attorneys' fees. Mac Tools requested attorneys' fees in the amount of $38,336.21 and submitted time records. The court granted attorneys' fees in the amount *644 of $9,584.05, more than 342% of the amount of the jury verdict. Allen argues that the trial court abused its discretion when it awarded attorneys' fees for more than one-third of the amount of the jury's verdict based on an open account. Mac Tools counters that the award of attorneys' fees was not excessive as the case was based on a contract rather then an open account. However, in their submitted brief Mac Tools states "[i]n order to acquire additional and replacement inventory for his distributor business, Allen was extended an open account by Mac Tools."
This Court has defined an open account as "an account based on continuing transactions between the parties which have not been closed or settled but are kept open in anticipation of further transactions... ." Cox v. Howard, Weil, Labouisse, Friedrichs, Inc., 619 So.2d 908, 915 (Miss. 1993) (citing Westinghouse Credit Corp. v. Moore & McCalib, Inc., 361 So.2d 990, 992 (Miss. 1978)). An open account is a "[t]ype of credit extended through an advance agreement by a seller to a buyer which permits the buyer to make purchases without a note of security and is based on an evaluation of the buyer's credit." Black's Law Dictionary 1090 (6th ed. 1990)). An action to recover on an open account is essentially an action to collect on a debt created by a series of credit transactions. H & H Design Builders, Inc. v. Travelers' Indem. Co., 639 So.2d 697 (Fla. Dist. Ct. App. 1994); Central Ins. Underwriters, Inc. v. National Ins. Co., 599 So.2d 1371 (Fla. Dist. Ct. App. 1992); Robert W. Gottfried, Inc. v. Cole, 454 So.2d 695 (Fla. Dist. Ct. App. 1984).
In the present case, the lower court did not address the question whether an open account existed. The cases in Mississippi dealing with the award of attorneys' fees when collecting on open accounts state "[a]n award of attorney's fees that is greater than the recovery on an open account complaint may be an indication that the attorney's fees award is exorbitant." Cox, 619 So.2d at 915. "This Court has, however, traditionally approved as reasonable awards of attorneys' fees in collection matters in the amount of one-third of the indebtedness." Dynasteel Corp. v. Aztec Indus., Inc., 611 So.2d 977, 986 (Miss. 1992). "This presumption is, of course, rebuttable." Cox, 619 So.2d at 915. "Under the circumstances of any given case, the judiciousness of adhering to this presumption may be impacted by the common factors for determining the reasonableness of an attorneys' fee award:"
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) The fee customarily charged in the locality for similar legal services; (4) The amount involved and the results obtained; (5) The time limitations imposed by the client or by the circumstances; (6) The nature and length of the professional relationship with the client; (7) The experience, reputation and ability of the lawyer or lawyers performing the services; and (8) Whether the fee is fixed or contingent.
Dynasteel, 611 So.2d at 986-87 (citing Kaiser Invs., Inc. v. Davis, 538 So.2d 427, 430 (Miss. 1989); Jack Cole-Dixie Highway Co. v. Red Ball Motor Freight, 254 So.2d 734, 741 (Miss. 1971)).
Mac Tools argues that it moved the lower court for attorneys' fees based upon the contracts between the parties and not upon an open account statute, and thus the percentage award cases cited by Allen are irrelevant. See Miss. Code Ann. § 11-53-81 (Supp. 1995).
The record reveals that Mac Tools and the Allens first entered into a contractual agreement which a security agreement guaranteed, obligating the Allens to pay Mac Tools reasonable attorneys' fees and costs for collecting any deficiency remaining on the indebtedness. Thereafter, the account which Allen and Mac Tools established reflected that there was an ongoing balance, there were several continuous transactions and the *645 parties expected future transactions, in order for Allen to purchase replacement equipment. However, the record reflects that Mac Tools established several different types of accounts with the Allens. The first incurred debt consisted of the initial security agreement. This was followed by the Mac Cap Financing Agreement and a Tool Purchase Account which are open accounts. Thus, the Allens ultimately had one secured debt and two unsecured debts in the form of open accounts. Mac Tools admitted as much in their brief.
Mac Tools' attorneys submitted documents and billings to substantiate the fees. Also, this action was not only on an open account but on an initial security agreement and included the defense of Allen's fraud claim against Mac Tools. It is "often stated that in the absence of statute or contract providing expressly therefore ... there can be no recovery of attorneys fees... ." Stanton & Assoc., Inc. v. Bryant Constr. Co., Inc., 464 So.2d 499, 502 (Miss. 1985) (citing Litten v. Grenada County, 437 So.2d 387, 388 (Miss. 1983); Bellefonte Ins. Co. v. Griffin, 358 So.2d 387, 391 (Miss. 1978)). Attorneys' fees were awarded below, under a contractual provision so providing. If this Court had affirmed the judgment of the circuit court Mac Tools would be allowed to attorneys' fees under the contract as awarded by the circuit court because the evidence in the record indicates that the legal fees incurred by Mac Tools were reasonable in light of the issues raised, both in the number of hours billed and the rate charged.
However, the award of attorneys' fees granted to Mac Tools also included the defense of the fraud claim. This Court is reversing and remanding on the matter concerning fraud. Thus the attorneys' fees incurred on this aspect will be on-going ergo this issue has not evolved enough to be determined by this Court. Also, if Allen proves fraud in the lower court there will be no attorneys' fees awarded. Consequently, this issue is reversed and remanded for further action consistent with this opinion.

I.

Cross-Appeal

WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT A DIRECTED VERDICT OR JUDGMENT NOTWITHSTANDING THE VERDICT IN FAVOR OF MAC TOOLS, INC. ON ITS COUNTERCLAIM AGAINST MARK M. ALLEN AND SHERRY A. ALLEN IN THE FULL AMOUNT DEMANDED, OR IN THE EVENT THE COUNTERCLAIM WAS PROPERLY SUBMITTED TO THE JURY BY THE TRIAL COURT, WHETHER THE VERDICT OF THE JURY WAS SO CONTRARY TO THE GREAT AND OVERWHELMING WEIGHT OF THE EVIDENCE TO THE EXTENT SAID VERDICT DID NOT FIND IN FAVOR OF MAC TOOLS, INC. AGAINST BOTH MARK M. ALLEN AND SHERRY A. ALLEN FOR THE FULL AMOUNT DEMANDED.
Mac Tools' counterclaim against the Allens sought to recover amounts due from them under the terms of the various agreements entered into between the Allens and Mac Tools with regard to the distributorship of Mark Allen. The counterclaim sought to recover the amount of $10,443.78 from both Mark and Sherry Allen which became due under the terms of the Purchase Order and Security Agreement. The security agreement was executed by the Allens in order to finance the purchase of Mark Allen's initial tool inventory for his distributorship. In addition Mac Tools sought to recover an additional $1,360.79 which Mac Tools claims was due from Mark Allen on his accounts. Mac Tools moved for a JNOV at the close of all evidence, which was denied by the lower court.
"[A] motion for J.N.O.V. tests the legal sufficiency of the evidence supporting the verdict. It asks the court to hold, as a matter of law that the verdict may not stand." Goodwin v. Derryberry Co., 553 So.2d 40, 42 (Miss. 1989) (citing Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984) (quoting Jesco, Inc. v. Whitehead, 451 So.2d 706, 713 (Miss. 1984))). "In deciding a motion for judgment notwithstanding the verdict, *646 the trial court must consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that may be drawn therefrom." Goodwin, 553 So.2d at 42. To review a denial of a JNOV this Court must
consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, [this Court is] required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Sperry-New Holland v. Prestage, 617 So.2d 248, 252 (Miss. 1993) (citing Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss. 1992) (citing Litton Systems, Inc. v. Enochs, 449 So.2d 1213, 1214 (Miss. 1984))). This standard of review is "predicated upon the fact that the trial judge applied the correct law." Sperry-New Holland, 617 So.2d at 252.
Mac Tools argues that the lower court erred in not granting a JNOV because the evidence was clear that no dispute existed as to the amounts due from the Allens. At trial Mac Tools called Mr. Scott Goen, Credit Manager of Mac Tools, who testified regarding the various contracts between the parties and the amount outstanding under the terms of those accounts. Mr. Goen was the only witness to testify and was cross-examined by Allen.
On cross-examination, when asked what the balance of the trade account was on October 5, 1989, the date of the termination of the distributorship agreement, Mr. Goen was unable to give that information because the accounting documents on which he relied at trial were incomplete and did not contain the figure. It is clear that the trade account balance at the end of October was a vital element in the proof which Mac Tools failed to supply. The testimony of Mr. Goen indicated that the claimed balance due on the start-up account as of October 1989, was $7,805.21. In testifying Mr. Goen failed to prove that the accounts were indeed accurate due to the credit and debiting of the various accounts. On cross-examination Allen questioned the accuracy of the accounts and established that he was entitled to certain credits. The jury was allowed to take into consideration all of the credits which could be applied to that account.
Based upon the record, it is apparent that Mac Tools failed to prove the amount owed on the account and the amount of credit Allen was to receive. These items were material. Due to Mac Tool's failure to prove these material facts, the jury properly found in favor of Allen on the counterclaim based on account.
Utilizing the test promulgated by this Court in determining if the lower court erroneously denied the JNOV, it is clear that the testimony of Mr. Goen created issues of fact about which reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions. "Factual disputes are properly resolved by the jury and do not mandate a new trial." McNeal v. State, 617 So.2d 999, 1009 (Miss. 1993) (quoting Temple v. State, 498 So.2d 379, 382 (Miss. 1986)). "The appellate court's role is to see that there is a fair trial given to both sides. We are not result oriented. The Court will not be the thirteenth juror." Walker v. Graham, 582 So.2d 431, 433 (Miss. 1991) (citing Bell v. City of Bay St. Louis, 467 So.2d 657, 660 (Miss. 1985)). Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. Neal v. State, 451 So.2d 743, 758 (Miss. 1984). Thus, the lower court was correct in not granting Mac Tools' motion for JNOV.
However, this Court is requiring that this case be reversed and remanded for the jury to determine if Allen's claim of fraud has merit. If the jury determines that there was fraud the effect would void any judgment obtained against Allen with respect to the debts incurred on the open accounts entered into based on this fraud. Therefore, if Allen was fraudulently coerced into obtaining more *647 tools on open accounts then the debts incurred thereon were void ab initio and Mac Tools would not be entitled to the debts at issue. It therefore remains to inquire whether Mac Tools fraudulently coerced Allen into continuing his distributorship and incurring the debts fraudulently.
However, Mac Tools is entitled to the amount owed under the initial security agreement that was guaranteed before Allen entered into the distributorship. Allen's claim against the initial agreement has no merit since he subsequently waived his opportunity to sue for fraudulent inducement.[1] The amount owed on the initial security agreement, with proper credits given, should be calculated by the jury as the lower court was correct in determining that Allen did not have a case based on fraudulent inducement. The issue of damages owed by Allen is a question that needs to be decided by the jury below as they will determine if he was fraudulently coerced into entering the subsequent open accounts. Thus, this issue is reversed and remanded.

CONCLUSION
Application of the law to the evidence and viewing the facts in the light most favorable to Allen leads to the conclusion that material issues of fact exist as to the issue of fraud and this issue is reversed and remanded. Since the award of attorneys' fees granted to Mac Tools by the lower court also included the defense of the fraud claim this issue has not become ripe and is accordingly reversed and remanded. Lastly, the issue of damages should be calculated by the jury after a determination of whether the open accounts and the expenses incurred were fraudulently encouraged by Mac Tools, thus the counterclaim is reversed and remanded. For the reasons set out above, this case is reversed and remanded to the Circuit Court of Hinds County, Mississippi.
ON DIRECT APPEAL AND ON CROSS-APPEAL: REVERSED AND REMANDED.
DAN M. LEE, C.J., PRATHER, P.J., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.
NOTES
[1] See Issue I. for discussion on Allen's fraudulent inducement claim.