No. 19,399.

OPAL STONER *v.* ELDON MARSHALL AND RUSSELL L. MARSHALL.
(358 P. [2d] 1021)

Decided January 30, 1961.

Mr. F. NELSON PABST, for plaintiff in error.

Messrs. SMITH, PYLE, JOHNSON AND MAKRIS, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

HOWARD HATCHER, who is not a party to this action, was the owner of a small doughnut shop. He negotiated with Stoner to sell the business to her. At that time Hatcher was indebted on his purchase promissory note to Marshall, from whom he had purchased the shop. Hatcher asked Marshall to meet with Stoner and himself to complete the sale of the shop to her. As part of the sale to Stoner she was in effect substituted for Hatcher on Hatcher's purchase money debt, Stoner giving Marshall her installment note for the principal sum then due of $6800.00 and Hatcher was evidently released. After making five payments on the new promissory note during the period between July 7, 1956, and November 28, 1956, Stoner failed to make further payments and Marshall commenced this action for judgment on the note.

Stoner filed her answer and a counterclaim admitting the execution of the note, but alleging fraud and misrepresentation on the part of Marshall in procuring it. Upon stipulation by the parties, Stoner's counterclaim for damages was dismissed with prejudice.

The case was tried to a jury. At the completion of

Stoner's evidence, the court, upon motion, directed a verdict for Marshall. Motion for a new trial was dispensed with and Stoner is here by writ of error seeking a reversal.

Stoner urges that the trial court erred in directing a verdict for Marshall because Stoner was induced to execute and deliver the note in question by reason of fraud and misrepresentation by Marshall, and urges that on allegedly conflicting evidence the matter should have been submitted to the jury for determination of the issues.

Stoner places great emphasis on the evidence presented by her at the trial which consisted of cross-examination of Marshall and direct testimony by herself to the effect that Marshall, just prior to the execution and delivery of the note, had replied affirmatively to Stoner's question of "Does the restaurant net $500 at the present time?" This is because the evidence was that Stoner after several months of diminishing operation ended up by netting nothing, it being Stoner's contention that this meant she would also make such a profit. And it is her further contention that without Marshall's assurance of such income she would not have purchased it, and that the answer in question was a fraudulent misrepresentation properly relied upon.

The record leaves room for doubt as to whether Marshall's statement as to the business earnings related to the present, for Hatcher had been the owner and operator for nearly a year. Of course, even if Marshall so stated, it amounted to no assurance that Stoner would equal that volume of business. She might well do more or less depending on her own type of operation. We note no evidence that the statement of Marshall, if intended to be taken by Stoner as indicative of what she would make, was not in fact what Hatcher had been making. She kept no books on her operation, and her testimony as to profits realized from the business is vague and misleading. She also admitted that embezzlement by em-

ployees and cost of repairs of equipment were deducted from the net profit. The record discloses little more than a mere guess as to what her net earnings actually were.

The trial court did not, however, decide whether these facts constitute fraud; for even if we assume that they did, Stoner must fail on another ground.

In *Tisdel v. Bank* (1931), 90 Colo. 114, 6 P. (2d) 912, which was very similar in its principal features to the case before us, the claim was also on a promissory note. There a defense asserted four years after the note was given, was to the effect that plaintiff had procured the note by false and fraudulent representation. The court assumed that the representations had been made and were true, and in affirming the judgment entered upon a directed verdict for the note-holder, stated the well-established rule that:

"When one is induced through false and fraudulent representations to enter into an agreement, upon discovery thereof, he has an election to either rescind, in which event he must tender back that which he has received, or he may affirm the agreement, and maintain his action in damages for deceit, but his election must be promptly made, and when once made, is final. If one elects to affirm the agreement, after full knowledge of the truth respecting the false and fraudulent representations, and thereafter continues to carry it out and receive its benefits, he may not thereafter maintain an action in damages for deceit, because this would constitute a ratification of the agreement and a condonation of the fraud; otherwise, one might, with knowledge of fraud, speculate upon the advantages or disadvantages of an agreement, receive its benefits, and thereafter repudiate all its obligations." (Citing many cases.)

" * * * if false and fraudulent representations were in fact made, this defense was waived, and there remained nothing for the jury to determine with reference thereto; therefore, the court did not err in withdrawing this question from the jury."

We note from this record that Stoner made payments until November 28, 1956, and was in operation until June 17, 1957. There was some indication that though she had closed the business she was still in possession of the shop on October 9, 1959, when her counterclaim was dismissed — some three years later. Nevertheless she urges that she did attempt rescission, but that evidence was precluded by the trial court upon objection of Marshall. Stoner's offer of proof shows, at best, mere negotiation for an adjustment.

■ In *Handy v. Rogers* (1960), 143 Colo. 1, 351 P. (2d) 819, a case decided upon almost identical facts, we cited 2 *Restatement of Contracts*, §480, on rescission as follows:

"From the standpoint of fraud as a defense or rescission, it was incumbent on the defendant to promptly and unequivocally give notice of election to avoid the contract."

This Stoner failed to do.

■ We conclude that even if false and fraudulent representations were in fact made and were entitled to be relied upon, which we do not deem to be the case here, such defense was waived and nothing remained for the jury to determine.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE DAY concur.