481 So.2d 846 (1985)
Dr. Larry TURNER
v.
Dr. V. Reed WAKEFIELD, Jr.
No. 55084.
Supreme Court of Mississippi.
December 18, 1985.
*847 Omar D. Craig, Oxford, for appellant.
Murray L. Williams, Water Valley, for appellee.
Before PATTERSON, C.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
The parties to this lawsuit are both chiropractors. Plaintiff/appellant Dr. Larry Turner, sued defendant/appellee Dr. Reed V. Wakefield for the $8,000 balance due on a promissory note for purchase of Turner's chiropractic practice. Wakefield affirmatively alleged that Turner wrongfully represented the value of the equipment and expected income from his first year of practice. From a defendant's verdict in favor of Wakefield, Turner appeals, assigning as error:
(1) The court erred in overruling the plaintiff's motion for a directed verdict;
(2) The court erred in granting defendant's requested instruction No. 5 in that there was no evidence or facts to warrant or justify the granting of said instruction;
(3) The verdict of the jury was contrary to the law, contrary to law and the evidence, and contrary to the overwhelming weight of the evidence.
Drs. Turner and Wakefield first became acquainted when Wakefield injured his neck playing football for the Ole Miss Rebels and sought treatment from Turner. Wakefield saw Turner for daily treatments at first and continued to see Turner weekly. Upon Wakefield's graduation from Ole Miss, Turner encouraged Wakefield to attend chiropractic school in Davenport, Iowa. During his study of chiropractics, Wakefield returned to Oxford and spent one month as an associate with Turner. Wakefield also worked at the clinic on two other occasions for about three weeks. Wakefield and Turner established a very close relationship in which Wakefield had the greatest trust and confidence in Turner. Upon graduation from Palmer College, Wakefield expressed an interest in returning to Oxford. Turner and Wakefield decided that Wakefield should purchase Turner's practice. Before purchase, Turner advised Wakefield that the normal takeover of patients from a practice would be about sixty to eighty percent. Wakefield requested that Turner show him the records for the practice but Turner refused and referred him to the First National Bank to see them. Turner told Wakefield "I'll be giving you $30,000 next year", which Wakefield understood to mean that he should make at least $30,000 in his first year of practice.
On August 25, 1978, Doctors Reed V. Wakefield and Larry Turner executed a promissory note for $12,000 for the balance due when Wakefield purchased Turner's chiropractic equipment for $18,000.
*848 After four months and four payments of $300 per month on the $12,000 promissory note, Wakefield sought advice from an attorney. The attorney contacted Turner stating that Wakefield questioned the validity of Turner's representations about the practice. Wakefield had not made a profit and was struggling to meet his monetary obligations. Yet Wakefield continued to make the $300 per month payments to Turner for eleven months. In December, 1980 Wakefield contacted his current attorney who told Wakefield to make no more payments. Dr. Turner filed suit in January, 1981 for the balance due on the promissory note of $8,000. At the trial in 1983 Dr. Roy Singley, witness for the defendant, testified that the equipment purchased by Wakefield was worth about four to six thousand dollars at most. Wakefield subsequently sold the equipment for the value of approximately $4,000.

II.
Did the court err in overruling appellant's motion for a directed verdict in that, as a matter of law (asserts appellant), appellee, by making payments on the note for eleven months after Wakefield charged Turner with fraud, waived the affirmative defenses of fraud, deceit, misrepresentation and thereby ratified the validity of the note.
In the case sub judice the trial judge was called upon to make a determination whether, under the facts of this case there existed a question of law for the judge or a question of fact for the jury. The trial court apparently believed it was a fact question to be assigned to the jury for resolution.
In resolving an issue of law or fact, the trial judge must first determine the relevant law to be applied, as the trial judge has the duty of law declaration.
Appellant cites several cases for the legal proposition that "when a party has full knowledge of all defenses to a note and executes a new note, payable at a future date, he then waives all his defenses and becomes obligated to pay the new note." Tallahatchie Home Bank v. Aldridge, 169 Miss. 597, 604, 153 So. 818 (1934). And where the facts and circumstances are such that a reasonably prudent person, judged by normal standards, would or should have made inquiry, which inquiry, if reasonably pursued and with ordinary diligence, would have lead to foreknowledge of his defenses, then it becomes the duty of the party or parties, to make such inquiry or investigation before executing the renewal note, and if he fails to do so he is as much bound as if he had actual knowledge of all the facts. Gay, et al. v. National Bank, 172 Miss. 681, 160 So. 904 (1935); Citizens National Bank v. Waltman, 344 So.2d 725 (Miss. 1977).
In a similar case of Stoner v. Marshall, 145 Colo. 352, 358 P.2d 1021 (1961) a case where purchaser counterclaimed four years after buying a business for failure to derive profits allegedly represented by the seller, appellant asserts that:
Where one is induced through false and fraudulent representations to enter into an agreement upon discovery thereof, he has an election to either rescind, in which event he must tender back that which he has received, or he may affirm the agreement, and maintain his action in damages for deceit, but his election must be promptly made, and, and when once made, is final. If one elects to affirm the agreement, after full knowledge with the truth respecting the false and fraudulent representation, and thereafter continues to carry it out and receive its benefits, he may not thereafter maintain an action in damages for deceit, because this would constitute a ratification of the agreement and condemnation of the fraud; otherwise one might, with knowledge of fraud, speculate upon the advantages or disadvantages of an agreement, receive its benefits, and thereafter repudiate all its obligations. Id. at 1022-23.
Thus, stated in general terms, the law of this case is that, assuming the fact of fraud, a contract obligation obtained by fraudulent representation is not void, but *849 voidable. Upon discovery thereof, the one defrauded must act promptly and finally to repudiate the agreement; however, a continuance to ratify the contract terms constitutes a waiver. Stoner, supra.
Having determined the applicable law to this situation, the second judicial function is to identify the facts of the instant case. When identifying the facts on a motion for a peremptory instruction or directed verdict, the court is required to assume as true all testimony offered in behalf of the opposition and any reasonable inferences therefrom; and if from both of these the evidence is insufficient, then, a directed verdict may be given, otherwise it is for the jury to decide the conflicting facts relating to the liability of the parties concerned. McGraw v. Smith, 209 So.2d 900, 903 (Miss. 1968).
In the case sub judice, Wakefield first notified Turner by letter in January, 1979 through his attorney at the time, that Turner had fraudulently misrepresented the amount Wakefield should make within the first year but he was also told that there was a variable of 60-80% takeover of patients. Wakefield testified that the reason he continued to make the payments until December, 1980 was that "after being in the business about three months, I began to realize that I felt like I had been misled and falsely represented the practice to. I was taking in enough money to pay my notes and having about ... very little money to eat food on, but there is a certain amount of pride in me and I felt like this was my first business venture in life. I had no understanding of the law. I felt like if I didn't make a payment, they're going to come down and throw me in jail right away. My father had co-signed this note with me in this town and I did not want to appear like I had failed right off the bat. I didn't know what to do, I just knew that I was obligated to pay this amount of money, and I paid the monies and had troubles, at times, making rent payments with just enough to live on.". He further testified "I wanted to make the business go because of my pride in trying to support myself, but I felt like I was tied up. I felt like I had a rope around my neck and I didn't really know what to do."
The facts show the defendant Wakefield to be a college graduate with additional specialized training in chiropractics. Both parties were of the same occupational training, even though Turner had more applied experience. Wakefield worked in this particular office on several occasions, and was aware of business activities.
Taking all of these facts as true, the charge of fraud is unsupported by mere expression of opinion by Turner of an expected income for the first year. Ryan v. Glenn, 344 F. Supp. 198 (D.C.Miss. 1972).
37 Am.Jur.2d, Fraud and Deceit § 265 (1968), states the applicable rule:
"The general principle that a representee has no right to rely upon matters opinionative in nature is held to apply only where the matter in question is as much within the knowledge of one party as the other, or where it is open to both parties equally for examination and inquiry. Thus, such statements may amount to fraud where there is a confidential relation between the parties, where the facts are not equally known to both of them, where fair investigation is prevented, or where the statement is deceptively designed to cause the representee to rely on it, in which case independent inquiry may be dispensed with because a factor has entered into the transaction which prevents its status as one at arm's length. Liability may also arise where the party expressing the opinion possesses special learning or knowledge on the subject, or where he has, is presumed to have, or assumes to have, knowledge upon a subject of which the other is ignorant, knowingly makes false statements on which the other relies, or has, or is presumed to have, means of information not equally open to the other, especially if the parties are not dealing at arm's length."
Id. at 201. In accord, Restatement, Torts § 542(a).
*850 Finally, in analyzing the legal principles announced to the facts and following the test applied in McGraw v. Smith to assume as true all the defendant's testimony, it does not appear that there is a fact issue for the jury's determination. The proof does not arise to the degree of the fraud charged, and even if fraud did exist, there was ratification of the contract after discovery of the fraud.
This record concludes that the trial court should have granted the plaintiff/appellant's motion for a peremptory instruction or a directed verdict as a matter of law. This case is, therefore, reversed and remanded for the entry of a proper judgment for the plaintiff/appellant.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
DAN M. LEE, J., not participating.